**SIGNED this 25th day of January, 2017**

_____
Shelley D. Rucker
**UNITED STATES BANKRUPTCY JUDGE**

_____

### UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF TENNESSEE
### WINCHESTER DIVISION

| | |
|---|---|
| **In re:** | **Case No. 4:15-bk-14773-SDR** |
| | **Chapter 13** |
| **Justin Peoples** | |
| **Cathy Cheryl Peoples** | |
| **Debtors.** | |

### MEMORANDUM

Creditor Midstate Finance Company, Inc. ("Midstate") has filed a motion asking the court to reconsider its confirmation of the debtors' chapter 13 plan. (Doc. No. 93, Motion to Reconsider). The confirmation order was entered on November 29, 2016, and the motion to reconsider was filed on December 12, 2016. The motion having been filed within fourteen days of entry of the order, the court may reconsider the order under Federal Rules of Bankruptcy Procedure 9023 or 9024, making Federal Rules of Civil Procedure 59 and 60 applicable to bankruptcy proceedings. The court will consider only Rule 60 because Midstate's motion

1

specifically relies on Rule 60(b)(6) as the legal authority for its request for the court to vacate the order of confirmation. (Doc. No. 93.) That rule provides that "[on] motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons . . . any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(L).

In its supporting brief, Midstate argues that the reason it is entitled to relief from the court's confirmation order is because the court erred in concluding that the value offered by the debtors to unsecured creditors was more than the amount that the unsecured creditors would have received in the event of a liquidation. Put in chapter 13 parlance, Midstate contends that confirmation should have been denied because the plan fails the "best interest of creditors" test. *See* 11 U.S.C. § 1325(a)(4). The debtors have responded, arguing that the motion should be denied on the basis that it offers no new evidence and is solely an attempt by the creditor to reargue its position on the value of two tracts of real property owned by the debtors. (Doc. No. 99, Response to Motion to Reconsider). The court agrees with the debtors and denies the motion to reconsider for the following reasons.

The party seeking relief under Rule 60(b) bears the burden of establishing the grounds for relief by clear and convincing evidence. *In re Gibson & Epps, L.L.C.*, 468 B.R. 279, 289 (Bankr. E.D. Tenn. 2012) (citing *Info–Hold, Inc. v. Sound Merch., Inc.,* 538 F.3d 448, 454 (6th Cir. 2008)). A Rule 60(b) motion is not to be used "as a substitute for an appeal, or as a technique to avoid the consequences of decisions deliberately made yet later revealed to be unwise[.]" *Id.* (quoting *Hopper v. Euclid Manor Nursing Home,* 867 F.2d 291, 294 (6th Cir. 1989)). Additionally, the Sixth Circuit has explained that, "while Rule 60(b)(6) authorizes a court to grant relief from a judgment for 'any other reason that justifies relief,' such relief is applied 'only

2

in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule." *In re Brown*, 413 B.R. 700, 705 (6th Cir. 2009) (quoting *Blue Diamond Coal Co. v. Trustees of the UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001)). The first five numbered clauses include, *inter alia*, the grounds of mistake, newly discovered evidence that was not previously discoverable, and fraud. Fed. R. Civ. P. 60(b)(1)-(3). The movant does not specifically mention any of these grounds, but a reading of the motion leads the court to believe the gist of the motion is that the court erred in refusing to accept the evidence presented at the confirmation hearing that there was a buyer for the two tracts of property who would have paid enough for the property to give the unsecured creditors a distribution of more than $30,000. The court acknowledges that Midstate did offer such evidence; however, the court did not find it persuasive in light of the history of the case.

In overruling Midstate's objection to confirmation, the court found that payment of $30,000 by the debtors was more than creditors would receive in a liquidation. Embedded in that conclusion was the court's calculation that such a distribution assumed a value of the two tracts of property in a range of $60,000. One tract is approximately one third of an acre. The debtors live on this lot in a mobile home with a small garage and carport where Mr. Peoples operates his auto repair business. The other piece is a five-acre tract with no improvements. The debtors' plan proposal assumed a $60,000 value. The commission on a sale for that amount would be approximately $4,800 assuming an 8% realtor or auctioneer fee, and the trustee's commission would be an additional $3,750, based on a $30,000 distribution. *See* 11 U.S.C. § 326(a). The court also anticipated some charge for the legal work involved in selling the property. That would leave approximately $50,000 from which the debtors' $20,000 exemption would be

3

deducted, leaving the $30,000 proposed to be distributed. There were no unpaid property taxes or mortgages against the property.

The proof of a higher value consisted of the testimony of Mr. Kim Klonaris, the manager of Midstate, who stated that his client was prepared to offer $66,000 for the two tracts of real estate with no contingencies. Midstate argues that an unconditional offer made at the confirmation hearing is persuasive, if not conclusive, evidence that the value of the property was $66,000, and that, after deducting the exemptions and costs, creditors should have been paid $36,656.49. If that were the case, then the debtors' offer of $30,000 was not sufficient to meet the best interest of creditors test. The court did not find the testimony to be that persuasive in light of the history between Midstate and the debtors and the timing of the unconditional offer.

This case has been pending since October of 2015. Before the case was a chapter 13, it was a chapter 7 liquidation. The debtors scheduled the property as "Mobile Home/24x28 Shop/5 Acre Lot" with a value of $43,000. (Doc. No. 1, Petition and Schedules of Debtors, Schedule A). It was not clear from the original description that there were two lots. When the trustee discovered this fact, she applied the homestead exemption to the one-third acre tract where the mobile home and shop were located. That left a five-acre tract available for unsecured creditors.

Ms. Edwards, as the duly appointed trustee, attempted to sell the unimproved tract. With the court's authority, she retained Mr. Wendell Hanson, an appraiser and auctioneer to evaluate and market the property. (Doc. No. 24, Order Authorizing Employment of Auctioneer). At a hearing on an Amended Motion to Settle Controversy, Ms. Edwards described her work with Mr. Hanson and her efforts to sell the property. She stated that Mr. Hanson provided her with pictures of the mobile home and an appraisal of the five-acre tract. It had initially been her intention to abandon the residence in the belief that it was not worth more than the exemption

4

and to sell the unimproved tract for around $20,000 based on the appraisal of $3,500 an acre. (Testimony of Trudy Edwards, August 15, 2016, at 11:05:22).

The pleadings in the case show that Midstate had previously indicated when the trustee first offered the tract for sale in the spring of 2016 that it was interested in purchasing the property for $18,000. (Doc. No. 31, Response of Midstate Finance Company, Inc., Exhibit 3). When the debtors learned of the offer, they informed the trustee that they would convert the case in order to keep their property. However, the debtors did not convert their case. Instead they sought financing and made a cash offer to the trustee of $21,000. The trustee then filed a Motion to Settle the Controversy with the Debtors by seeking authority to sell the unimproved five-acre tract to the debtors for $21,000. (Doc. No. 30, Motion to Settle Controversy). The trustee represented in the motion that Mr. Hanson appraised the property at $3,500 an acre. Because there had been no other offers, the trustee represented to the court that she believed $3,000 an acre from the debtor met "the highest and best offer received by . . . a creditor in the case." (*Id.* at 2). She continued that "the offer of compromise and settlement on behalf of the Debtor [was], in the Trustee's opinion, after discussing the valuation with the appraiser, in the best interest of the creditors of the Debtors' estate, and that it would result in the resolution of the matter without the need for the cost and expense of a possible sale on the chance that no buyer would be found." *Id.*

Midstate responded to the Motion to Settle and, as evidence of the insufficiency of the price, it attached the assessed values for tax purposes of $34,500 for the residence and $39,600 for the other 5 acres, for a total of $74,100. (Doc. No. 31, Response, Exhibit A).

At the hearing on June 20, 2016, on the Motion to Settle, the court allowed the trustee to conduct an auction. She reported back to the court that she now had an offer from Midstate for $31,000 for the unimproved five-acre tract, contingent upon inspection of the property and an

5

offer of $31,000 from the debtors with no contingencies. The court directed the parties to continue with the auction and reset the motion for August 15, 2016.

Prior to that hearing, Midstate again amended its offer of $66,000 for both tracts of property. The trustee had never sought to sell the improved tract. On August 15, the court conducted the adjourned hearing on the Motion to Settle. At that time the trustee expressed her concern that the values for the home were being "artificially inflated." (Testimony of Trudy Edwards, August 15, 2016, at 11:02:45). She was concerned that the values were so far in excess of what her appraiser had told her they should be that she was concerned about accepting Midstate's offer. She also noted that Midstate was approximately 80% of the unsecured debt. From that statement, the court concluded that whatever amount Midstate was bidding, 80% of the amount directly benefitted Midstate. She asked the court for guidance.

At that time, Midstate also requested that it have thirty days to inspect the property before making its offer unconditional and sixty additional days thereafter to close. The debtors, who believed that their offer of $31,000 for the unimproved tract should be accepted, complained that the target kept moving and that they were unable to determine what they could or should do to save their home. With the parties continuing to go back and forth and the trustee suspicious of the motives of the creditor, the court determined that the entire auction process needed clarification. What had been a motion to settle a controversy on one piece of property had become an auction sale of two tracts, and both parties needed a final deadline and clear terms for the bidding procedures. The trustee was directed to file an appropriate motion to sell the property. She did so on August 17, 2016. (Doc. No. 45, Amended Motion to Approve Compromise and Settlement (Notice of Intent to Sale) (*sic*)). Midstate responded on August 19, 2016, requesting assistance in obtaining access to the property before the deadline to make an

6

offer expired. Before the court ruled on that request contained in the amended response, the debtors converted their case to a chapter 13 on August 24, 2016. The conversion mooted the issue of the settlement and the sale by the chapter 7 trustee. (Doc. Nos. 62, 63).

At the hearing on confirmation, Midstate's officer testified that Midstate would still pay $66,000 for the two tracts and removed any contingencies from its offer. However, when asked directly if he would still pay $66,000 for the property even if there were a "meth house" on the property, he hesitated and began explaining how Midstate had wanted to inspect the mobile home for structural soundness. (Testimony of Kim Klonaris, November 21, 2016, at 10:59:32). He then testified that they were really looking at the property as land and not for the mobile home. These statements seem inconsistent. If the value was in the land, then the inspection contingency included in the August offer was unnecessary. If the structural integrity of the improvement really was important, then the offer made at confirmation was suspect as being a self-serving statement to artificially inflate the value as the trustee had suggested.

For the court to reconsider its ruling it must determine that the offer was conclusive evidence of the value of the property at the time of confirmation. *In re Williams*, 480 B.R. 813, 817-18 (Bankr. E.D. Tenn. 2012) ("[T]he appropriate timing for . . . valuation is the date of confirmation."); *but see id.* at 817 (collecting cases holding that the date of the petition is the appropriate date for valuation). Given this history, there exist reasons to question whether $66,000 was the value. The court did not find the offer to be conclusive proof of value. First, there was no written offer. It was an offer made at a time when there was no one who would accept it. It was not based on any independent analysis of the value of the property. Furthermore, it was made by a creditor that would only be out of pocket about 20% of the price it was offering to pay because of the size of its unsecured claim. Finally, the court did not find the testimony that

7

there were no longer any contingencies credible. Between the self-interest to increase the price and the hesitancy with which the Midstate officer testified about the removal of the contingencies, the court did not give substantial weight to the testimony in determining the amount. The court had before it the debtors' statement on Schedule A reflecting a value of $43,000, an appraiser's assessment, and the trustee's testimony at the hearing that she believed that $50,000 was a reasonable price, especially when costs were added to that amount.

Relying on that information and history, the court found that a distribution of $30,000 reflected a value that was more than would be obtained in the event of liquidation. The court does not find that it erred in giving more weight to the debtors' assessment of the value as represented in the plan. Nor does the court find that there exists any other reason justifying relief from its order.

For these reasons, the court will deny Midstate's motion to reconsider. A separate order will enter.

###